May it please the Court, Dominic Carolla for Appellant, Scott Timber Co. and the Pittsburgh Forest Products Company. I'd like to reserve five minutes of my time for rebuttal, please. The Supreme Court, in cases like Winter, Munafi Green, and Masaryk v. Armstrong, has made clear that a preliminary judge is an extraordinary remedy reserved for exceptional cases where a plaintiff makes a clear showing and substantial proof that he or she is entitled to such relief under each of the four plenary injunction factors. This is not one of those cases. In this case, the District Court granted a plenary injunction based on a finding that the plaintiff demonstrated serious questions on his merits. The District Court expressly used that finding of serious questions as a proxy for finding the plaintiff satisfied their burden on irreparable harm and public interest factors at the forefront of the plenary injunction and standard. In both instances, the District Court committed plain legal error that warrants reversal of the plenary injunction under this court's precedence, and those of the Supreme Court. Thank you. Not from an exceptional case. Let's put that aside for a moment. Let's have a little bit of a discussion. Is that okay? Of course. I think it's fine. So the District Court used our test that if there's serious questions going to the merits, which we recognize still survives. Yes, sir. So do you contend here that the District Court erred in that finding? The slide is here. Yeah, the first problem, serious questions. There were serious questions here on the merits. We are disputing whether or not. Remember, at the plenary injunction, there were competing affidavits about whether or not there were sightings or whatever the correct terminology is for the marble or not, certainly, in this particular trial. Right? Correct. There were competing declarations. We do understand the first three experts that we presented whose testimony was not interdicted on the record, and one of the, I think, a key statement that was made by Starkovich was that, based on the sampling and the design of the protocol that was used, there's 95% probability of probable absence in the harvest unit,  and none of those three experts, Dr. Himmels, Dr. Starkovich's, or Dr. Marr's last testimony, was interdicted in the District Court's opinion. So we do strongly contend that the District Court erred on the serious questions issue. However, even if the court accepts that there are serious questions in the record, the District Court clearly erred out of law and rely on that finding. So even under, well, under Winter, even under our testimony, the case will be adopted. We still recognize our sightings. In alliance with the wild rice. That's right. Yes. We made it clear that we still have to show irreparable harm. Correct. Now, the District Court, and I will acknowledge where I'm at, it is confusing because it doesn't look like she may have utilized the same tests for serious questions for evaluating irreparable harm, which is the point you were just making. Yes. In ER 13, that portion of the district. But that would be a legal error, correct? Yes, absolutely. And that's where we're continuing on a deal. The District Court found, unequivocally, that if Marlowe Marillettes do not occupy the parcel, there's no likelihood of irreparable harm. And the District Court found that that was the same issue on the merits, whether or not birds were nesting in the harvest unit. And the District Court only found serious questions on the issue. And, you know, you referenced in your affidavits, if you look at the Wild Swan case. Actually, I take that back. If you look at the Southwest Voter Registration Education Project case, v. Shelley, that was a Voter Rights Act case regarding the effects of postcard ballots, whether or not they have a discriminatory effect. And what the District Court said is, there is a significant dispute on the record about whether it has to the degree of significance of the disparity of the discriminatory results. Thus, although plans to show a possibility of success on merits, we cannot say at this stage that they have shown external likelihood. And that's this case. At most, plans demonstrated a possibility of success on merits. And, therefore, it was an error of law to use that finding as a basis for finding a likelihood of irreparable harm. You've just conflated a number of different principles there. So, on the sliding scale test, the first thing that the District Court judge had to find was there are serious questions going to the merits. And that's in lieu of the traditional test, where the District Court would usually find that the plan is substantially likely to prevail. We just changed the way you analyze that first part of the question. But we still, and in the ESN context, the District Court has made it clear that the other two factors always stand in favor of the species. That is, public interest and the set of other factors. Yeah, and the balance of equities. The balance of equities always stands in favor of the species. So, the key thing in all these ESA cases is irreparable harm. And here we're in Section 9, not Section 7. Great. So, the District Court, where I think it looks like the District Court may have been off base, is not to make a factual determination. As you were just saying, to make a determination. That it's not reasonably likely that the evidence you produced outweighed the evidence they produced. Therefore, there was no possibility for irreparable harm. And you just kept finding that you apparently made, you used the wrong legal statement. I'm not sure I could see that, Your Honor. The District Court acquitted. I didn't see anything that was opposed. I know. I'm just saying, I think what the District Court did is it acquitted any violation of Section 9, being any potential injury to any assailant or species as irreparable. And what it found in its opinion is that, if marble marolettes do not occupy the parcel, there is a likelihood of irreparable harm. So, it did make a factual determination on the issue of whether marble marolettes occupy the harvest area. It just found that it didn't, like some demonstrated that it was likely. It demonstrated that it was really possible, but it raised serious questions of merits. Now, we contend that the District Court absolutely conflated the merits inquiry and the irreparable harm inquiry. Because the District Court essentially said, well, any violation of Section 9 is per se irreparable harm, as the District Court was saying, by saying that those two factors were intertwined. But the Supreme Court has made it clear that irreparable harm, as you yourself said, Your Honor, is a separate inquiry. And certainly, there is a lot of precedent, both in this Court and in the District Court's circuit, that a plaintiff in an ASA case is required to demonstrate irreparable harm at the species level, and then not any violations of Section 9. Mr. Carrillo. Yes, Your Honor. The District Court judge had said, serious questions raised by the conflicting affidavits as to whether the marolettes more than occupied the harvest in this particular species. And had gone on to say, if the plaintiff's affidavit is weightier than the defendant's affidavit on that issue, so it probably was irreparable harm. That would be institutionally. Yeah, I think they have to demonstrate it's likely. More likely than not. More likely than not. So if you just go down an additional step and take the same affidavits and give them credibility to the plaintiff's affidavit, it's given greater weight to the plaintiff's affidavits. That would be normal. That's true. And the District Court didn't do that. And that's the area that you say, I don't want to go around it. So the District Court found what you're going to do. I don't think that that's necessary, because the District Court found that there was compelling arguments, compelling experts on both sides, that the plaintiffs didn't present a strong enough case. And that's why we're continuing this. The court is to be reversed. Well, I'm not sure you get a second bite of the apple. We presented a multidisciplinary team of experts alone. And the plaintiffs presented one. They had every opportunity to present as many as they wanted, on as many subjects and scientific disciplines as they wanted. But they didn't. And it wouldn't be fair to re-enact the normative being necessary to remand if the plaintiff sees this matter. What do you think of it being concluded as an error of law? Or what do you think of the fact that the District Court is never going to present it? I think, in this case, it's not necessary for it to remand if the plaintiff sees the facts. And the District Court is to be reversed. And I want to get to the serious questions, because there's been a lot of talk about this. Are you saying that the record shows that, as a matter of law, defense affidavits are weightier on the issue of irreparable harm than the plaintiff's affidavits? The plaintiffs didn't make the burden to demonstrate that irreparable harm is likely. Their affidavits didn't meet that standard. And the District Court found both. The plaintiff's affidavits said, there are more or less, if you cut the trees, there won't be any rusty areas. There's more or less. Isn't that weak? At least to the point of presentation of evidence? It has to be said, though, that their affidavits, in some sense of the affidavits, are about to go lightly. It was based on scientific uncertainty. And I think there's good reason why the Court didn't find that the plaintiff's affidavits met their burden, because they haven't met the burden that it's likely. That's why the Court found that there are serious questions on the merits. The District Court refused to pursue them to the experts. Well, that's the problem. What you got to do with it, once you got to irreparable harm, that was the problem. If I may, I'd like to introduce my first witness. Good morning. May it please the Court, my name is David Cruz, and I represent the Plaintiffs. In this case, I'm joined by my co-counsel, Nicholas Keeley, and Lance Keeley. Now, the forests that issue in this case are well over a century old, and they can be cut down in the span of a weekend. Once logged, these mature and old-growth trees cannot be cut back on the steps. And without a preliminary injunction, this case, and so many like it, are effectively over before the merits of the case can even be discredited. They're only over for birds that are there, but if they're not birds, that doesn't make any difference, right? Well, there is a formulation that was argued, which is, did the District Court judge adequately consider item 2 factors in record in finding that a serious question as to the merits would sound to me like liability. Keeley, today, as establishing a probability of irreparable damage, which sounds to me like damages, does the liability finding satisfy the demonstration? I think, as a matter of law, the mere finding of a likelihood of success in the merits, even, or a serious question as to the merits, does not establish a likelihood of irreparable harm, I think. In the Cottonwood environmental decision, as this Court explained, there's no presumption of irreparable harm, even in endangered species in our cases, just because the finding of a serious question as to the likelihood of success in the merits. But I think that, in this case, the District Court made specific findings about a record order. Counsel for the defendants has argued that one paragraph of the District Court's decision is adequate, that she improperly conflated the harm and merits factors. That argument entirely ignores the second paragraph of the lawsuit. I agree with that. When I read the District Court's order, what she said was, the first and second, both are injunctive factors, and the third and fourth are indiscriminately injunctive. Since these two factors are bound together, plainly speaking, provides sufficient showing of likelihood of irreparable harm by showing that serious questions of success to the merits. So, it's true. When I read that, when I read that, it looks to me like she was consulting, and that she was just, as Judge Baird would make, was just, and what she didn't do was to make, as Judge Baird was, it was her change of counsel a minute ago, was to resolve that factual determination on, did she believe their, their experts, or did she believe yours, and therefore, she could make findings based on who she credited. She didn't do that. She just seems to have fucked over. Well, the merits factor and the irreparable harm factor are two separate factors that are inherently injunctive to this. And this Court and other courts have explained that they are related, but they are two separate factors. And when we're reviewing the sufficiency of the district court's finding on the merits, this Court may only find that there is evidence and record to support a logical and plausible conclusion that there are serious questions about the merits. And based on the testimony of Dr. O'Reilly, based on the wealth of information, as a matter of fact, I think the district court very plainly did not abuse its discretion in making that finding. That finding was based on a correct legal standard because of those questions. This is the evidence that would sustain the finding. The issue is, did she make a separate finding? Yes, sir. I think, if you're asking the record, then we need to decide whether the district court made a separate finding of irreparable harm. But I think the district court would have entered if there was only the, the finding that the satisfaction of the merits factor would have satisfied the irreparable harm factor per se. But that's not what the district court did here. The district court in one paragraph said because they satisfied the merits in finding that there was irreparable harm, the danger taking went on in the next paragraph to make specific factual findings. And that is exactly why plaintiffs use an influence area. Excuse me, sir. Can you give me the citation, just let's say? Yes. The citation is at page 14 for, for order, which is ER 14. There's the exact text for page 14. Um, where the district court specifically said that the defendants have in fact alleged an interest in the specific members of Margaret Willett's thesis. Plaintiffs may care about the thesis as a whole, but in this suit they assert an interest in the Margaret Willett's that occupy the Betsinger's parcel. Are you reading, are you reading 14? You're reading from the first paragraph or the second paragraph? I'm sorry, the first paragraph of that page, which is the second paragraph of the judge's decision on irreparable harm. Uh, Judge Aiken said that the plaintiffs have specifically alleged an interest in observing Margaret Willett's in that parcel. They cannot observe Margaret Willett's if it is clear to them. Since irreparable harm is bound up in the serious questions inquiry, and since plaintiffs demonstrated an interest in the pair of Margaret Willett's allegedly seen flying over the Betsinger's canopy, plaintiffs have established likely an irreparable harm theory in the judgment. So in addition to the first paragraph, what the question is is there is there a probability of irreparable harm that depends on whether the borrowers are more likely to have been there than not to have been there? Well, respectfully, I think that is an incorrect premise. I think if the district court made an error in law that was limiting the plaintiffs showing irreparable harm to showing the harm to the Willetts specifically, um, the defendant's entire argument is that if the harm is not there, the plaintiffs have expressed an interest not only in the Margaret Willetts that are in the area but also in the recreational or just the aesthetic interest in this forest in general. And this theorem are able to show that it is more likely than not that Willetts in the site basin that is the central portion existed before there can be irreparable harm to them by cutting the trees. Your Honor, I respectfully disagree and I think there's a wealth of case levels in the Supreme Court in front of this jury that says otherwise. Okay. I'm going back to the decision in Wynter. The Supreme Court explained that to us in a preliminary injunction. The plaintiff must establish that he is irreparable harm. Uh, they explain again... He is irreparable harm because of semi-standard water wash, right? Although I think that there is not a zone of interest that says it's irreparable harm. That is a a show of abstractions and we'll get to the facts. And the scientific interest here of birdwatchers is to see birds. If they aren't there, he doesn't have the aesthetic interest in seeing them. Your Honor, I disagree again. It's not to see the forest. It's to see the birds. It is in the declaration of Max Eakin and the declaration of Francis Etherington that the plaintiff has specifically alleged an interest not only in observing market realignment but in using this area for aesthetic and recreational purposes. The Endangered Species Act does that. It does. And this court has held that even in Endangered Species Act cases, the interest in forest generally for recreational and aesthetic interests... No, but Your Honor, I direct this court to several cases where the court specifically looks at the plaintiff's interest in forest generally even though the subject of the litigation had nothing to do with trees. Well, he's just resettled to her judgement whenever it's coming but does that not just go to standing? Well, there's a violation of section... Wait, I need to clarify this tragically. There's a violation of section 1. You're going to take the object, you're going to take the habitat, you're going to take the species. That's where it occurred. That's the violation that you have to establish. Right? In order to get a judgement in your favour, that's where you have to establish. Ultimately, that takes life. Here we have three serious questions that take life. Now, let me ask you this. Now, in getting that, if you were to do that, does that have anything to do with the merits of a violation of section 9? No, it does not have anything to do with merits. How does that relate to the plumerian juncture? Because it relates specifically to a rebel war. The merits have to do with whether tape is likely, whether marble masks are likely. In the traditional formulation of the plumerian juncture test, the test is very likely to prevail on the merits of your claim. It's very likely to prevail on the merits of your claim and is going to be a violation of section 9. That's ultimately the discordant trial, which we'd like to get to. Yes, that's true. I don't know whether it's been many years since I've been a judge on the court. Here, the discord's well under our formulation. So, okay, there's a pretty close question. There's serious questions going to the merits of your claim. So, now, if I'm going to get, if I know these other two factors, then we're going to always be in favor of a section of the ruling, just in case. So, the critical inquiry now focuses on irreparable harm. And, you know, it's just not clear what the district court judge  has to say about this. So, the merits relates to the scrutiny of whether there's harm to the plaintiffs based on the interests that they have alleged. And this court, if I can have a moment, I would like to say that in the case that was brought up, the case that was brought up, the case that was brought up, the case that was brought up, the case that was brought up we quickly recognized the issue of dis acording . Coincidentally though conflated the harm and merits factors and the decision found those factors without addressing the merits . We found that murder was harmless. Because of such interest in the forest and because it was uncontested that that was their own problem. On that basis the plaintiffs established irreparable harm. I think this case is nearly identical if not identical to the line of anarchists versus Christians. Our position is that it needs to be addressed separately. Even as it did
judges: Paez, Bea, Lamberth